IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHAEL DAVID MELTON,                §
                                     §
        Plaintiff,                   §
                                     §
v.                                   §        Civil Action No. 3:14-CV-2202-N
                                     §
HUNT COUNTY, *et al.*,               §
                                     §
        Defendants.                  §

## ORDER

        This Order addresses Defendants Hunt County (the "County"), Hunt County Sheriff's Office (the "Sheriff's Office"), Randy Meeks, and Kelly D. Phillips's motion for summary judgment on the issue of qualified immunity [11].  The Court grants the motion in part and denies it in part.

### I. ORIGIN OF THE PARTIES' DISPUTE

        This is a civil rights action that arises out of Plaintiff Michael David Melton's mistaken arrest for an assault he did not commit.[1]  On June 28, 2009, Defendant Phillips, then employed as a deputy with the Sheriff's Office, was dispatched to a hospital in Greenville, Texas to investigate a reported assault.  Defs.' App. 001 [13].  At the hospital, the victim, Richard Griffeth, told Phillips that a man named Michael Melton had assaulted him.  *Id.*  Griffeth explained the circumstances surrounding the assault, and Phillips generated a written

---

[1]The facts in this section are drawn from Melton's original petition [1-3], the parties' briefs, and the summary judgment evidence before the Court.

report and took photographs of Griffeth's injuries. *Id.* at 002. Phillips submitted his report to the Criminal Investigation Division (the "CID") for the Sheriff's Office. *Id.* Meeks, the Hunt County Sheriff, was not involved in Phillips's investigation or his decision to further the report to the CID. *Id.*

Phillips's report specifically identified Michael David Melton (hereinafter, "Melton"), the Plaintiff, as the suspect in the assault. *See* Pl.'s App. 006 [17]. Phillips does not explain how he came to identify Melton, as opposed to the true assailant Michael Glenn Melton, as the suspect in his report. To fill this gap, Melton submits the affidavit of Brian Alford, a former lieutenant in the Sheriff's Office. *See id.* at 003–004. Alford explains that the Sheriff's Office maintains an existing contact database known as "Personal Identification History through net data" ("PID"). *Id.* at 003. Although how PID operates is not entirely clear, it appears that an officer can enter data, such as a name, into the system and the system will identify known individuals matching the provided data. *See id.* Alford concludes, based on his experience, that Phillips's identification of Melton as the suspect in his report resulted from him entering only Melton's first and last name, and then failing to cross-check the result with any further identifying characteristics. *Id.* at 004.

On July 14, 2009, Jeff Haines, an investigator with the Sheriff's Office, made contact with Griffeth regarding the assault. Defs.' App. 004. Griffeth told Haines that he would contact the CID to make an appointment to provide a sworn affidavit concerning the assault. *Id.* Haines next heard from Griffeth in March of 2010, when Griffeth called to inquire about the case. *Id.* After Haines told Griffeth that he had never provided a sworn affidavit,

Griffeth provided an affidavit to the Sheriff's Office regarding the assault on April 6, 2010. *Id.* at 004–005.

On July 29, 2010, the Hunt County Attorney's Office charged "Michael Melton" with the assault of Griffeth. *Id.* at 006. The complaint against Melton was based on Phillips's incident report. *Id.* A Hunt County Court at Law judge issued a writ of capias for the arrest of "Michael Melton." *Id.* at 007–008. In May 2012, Melton was arrested on the 2010 writ of capias. *Id.* at 009. Melton was held in jail for sixteen days. Orig. Pet. ¶ 16. When the Hunt County Attorney's Office apparently discovered Melton was not the Michael Melton who had assaulted Griffeth, it dropped the charges against Melton on August 16, 2012. *Id.* at 010.

Melton brought suit in state court asserting both federal and state causes of action. Melton brought claims under 42 U.S.C. § 1983 against Meeks and Phillips (collectively, the "Individual Defendants") in their individual capacities for unlawful arrest and detention in violation of the Fourth and Fifth Amendments. Melton also sued the County and the Sheriff's Office under section 1983 for municipal liability based on official policy and failure to train. Finally, Melton raised state law claims for false imprisonment, intentional infliction of emotional distress, assault and battery, negligence and gross negligence, and negligent hiring, supervision, and training. Defendants removed the action to this Court on June 16, 2014. The Court entered a qualified immunity scheduling order [9], and Melton filed his Rule 7(a) reply to Defendants' assertion of qualified immunity. Defendants now move for summary judgment.

## II. THE LEGAL STANDARDS

### *A. Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated

assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Qualified Immunity

"Qualified immunity is a defense available to public officials performing discretionary functions '. . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Noyola v. Texas Dep't of Human Res.*, 846 F.2d 1021, 1024 (5th Cir. 1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine of qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because "qualified immunity is designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law,'" denial of qualified immunity is appropriate only in rare circumstances. *Brady v. Fort Bend Cnty.*, 58 F.3d 173, 173–74 (5th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To resolve a public official's qualified immunity claim, a court considers two questions. First, has the plaintiff shown a violation of a constitutional right? *Saucier v. Katz*,

533 U.S. 194, 201 (2001). And, second, was the right "clearly established" at the time of the public official's alleged misconduct? *Id.* The second inquiry is critical: unless the official violated a clearly established constitutional right, qualified immunity applies. *Pearson*, 555 U.S. at 231. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 235. "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### III. MELTON'S SECTION 1983 CLAIMS

#### A. Melton's Fourth Amendment Claims

An individual has an established right under the Fourth Amendment to be free from arrest without probable cause. *E.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Defendants contend that *Michalik v. Hermann*, 422 F.3d 252 (5th Cir. 2005), controls this case. *Michalik* was a section 1983 case in which plaintiffs alleged the police had wrongly secured and executed a search warrant that was based on stale information. *Id.* at 254. The Court held that liability based on *Malley v. Briggs*, 475 U.S. 335 (1986), and *Bennett v. City of Grand Prarie*, 883 F.2d 400 (5th Cir. 1989), for procurement of a defective warrant is limited to the warrant's affiant and any officer who prepares the warrant application with knowledge that a warrant would be based solely on the document prepared. *Michalik*, 422 F.3d at 261; *accord Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 364–65 (5th Cir. 2007). Based on this precedent, Defendants contend neither Phillips nor

Meeks may be held liable for a Fourth Amendment violation because neither is alleged to have procured Melton's arrest warrant or prepared the warrant application.

However, *Michalik* is not the only applicable case when a section 1983 plaintiff alleges false arrest. *Franks v. Delaware*, 438 U.S. 154 (1978), established that it is a Fourth Amendment violation where police procure a warrant through "deliberate falsehood or . . . *reckless disregard for the truth* . . . ." 438 U.S. at 171 (emphasis added).[2] The Fifth Circuit has confirmed that *Franks* liability extends beyond a warrant's affiant to any government official who makes a reckless misstatement. *See Hart v. O'Brien*, 127 F.3d 424, 448–49 (5th Cir. 1997) ("[A] deliberate or reckless misstatement may form the basis for a *Franks* claim against a government official who is not the affiant."), *abrogated on other grounds by Kalina v. Fletcher*, 522 U.S. 118 (1997); *accord United States v. Brown*, 298 F.3d 392, 408 & n.9 (5th Cir. 2002) (Dennis, J., concurring). Here, because Melton alleges Phillips made what amounts to a reckless misstatement in identifying Melton as the suspect in Griffeth's assault, *Franks*, not *Michalik*, is the governing case.

The Court concludes that, as to Phillips, questions of fact preclude summary judgment based on qualified immunity. Melton has introduced evidence suggesting that Phillips's identification of Melton in his incident report was reckless. For instance, Brian Alford surmises that Phillips identified Melton as the assailant merely by entering the assailant's first and last name into the PID system. Pls.' App. 003–004. Alford suggests it was

---

[2]*Michalik* expressly found that there was no *Franks* claim because the plaintiff had not alleged a false statement in the warrant application attributable to defendants. 422 F.3d at 258.

improper to use the PID system without further knowledge of the assailant's characteristics. *Id.* The mechanics of the PID system remain unclear. It also remains unclear the extent to which Phillips obtained identifying information of the assailant from Griffeth, and whether any of that information was cross-checked against the PID results. These open questions preclude qualified immunity because their resolution in Melton's favor could support a finding that Phillips was reckless in identifying Melton as the assailant, satisfying the requirements for a valid *Franks* claim. Accordingly, the Court concludes Phillips is not entitled to qualified immunity on Melton's Fourth Amendment claim.

The Court comes to the opposite conclusion as to Melton's Fourth Amendment claim against Meeks. Melton presents no evidence that Meeks was involved in the investigation in any way. His only connection to this case appears to be that he was Sheriff. Thus, whether under *Michalik* or *Franks*, there is no basis for holding Meeks liable for Melton's false arrest. The Court grants summary judgment to Meeks on Melton's Fourth Amendment claim.

### B. Melton's Fifth Amendment Claims

Defendants argue Melton's Fifth Amendment claim fails because the Fifth Amendment applies only to violations by federal actors. *See* Br. Supp. Defs.' Mot. Summ. J. 23 [12] (citing *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996)). Defendants are correct that the Fifth Amendment's due process clause applies only to federal actors, *see, e.g.*, *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (citing *Morin*, 77 F.3d at 120), and to the extent Melton asserts due process claims based on the Fifth Amendment, the Court grants

Meeks and Phillips summary judgment on those claims.  However, other provisions of the Fifth Amendment, such as the prohibitions against self-incrimination and double jeopardy, have been applied to the states through the Fourth Amendment.  *See id.* n.6.  Nevertheless, Melton has neither alleged nor presented any evidence of conduct that would support a section 1983 Fifth Amendment claim.  Accordingly, the Court grants summary judgment to Meeks and Phillips on Melton's section 1983 Fifth Amendment claims.

## IV. Melton's State Law Claims

In addition to his section 1983 claims, Melton bring claims under Texas state law for civil conspiracy, false imprisonment, intentional infliction of emotional distress, assault and battery, negligence and gross negligence, and negligent hiring, supervision and training.[3]

### A. Texas Official Immunity

The Texas doctrine of official immunity insulates government employees "from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."  *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).  Unlike the defense of qualified immunity, a state actor claiming official immunity bears the burden of establishing the elements of the defense.  *Id.* The doctrine's good faith requirement is substantially similar to the test of reasonableness included within the federal qualified immunity doctrine.  *See id.* at 656.  Thus, the defendant must show "a reasonably prudent officer, under the same or similar circumstances," could

---

[3]Melton does not assert negligent hiring, supervision, and training claims against Phillips.

have acted in the same manner. *Id.* To controvert an officer's showing of good faith, "the plaintiff must show that 'no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *Id.* at 657 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993)). Melton does not argue that Individual Defendants were acting outside the scope of their authority or that they were not performing discretionary duties at all times relevant to his suit. The only question is therefore whether Individual Defendants were acting in good faith.

To demonstrate good faith, Defendants refer the Court to their arguments on the issue of qualified immunity. In crafting the "good faith" standard, the Texas Supreme Court stressed that the standard was "derived substantially" from the federal qualified immunity standard, which asks whether a reasonable officer could have believed his conduct to be proper under clearly established law. *Chambers*, 883 S.W.2d at 656 (citing *Swint v. City of Wadley*, 5 F.3d 1435, 1441–42 (11th Cir. 1993)). Here, the Court's determination that Phillips was not entitled to qualified immunity also controls its analysis of official immunity under Texas law.[4] As discussed above, Melton has raised a question of fact as to whether Phillips acted recklessly in identifying Melton as Griffeth's assailant. Thus, there remains

---

[4]Even had the Court determined that Phillips was entitled to qualified immunity on Melton's Fourth Amendment claim, Phillips would not necessarily be entitled to official immunity. The *Chambers* court emphasized that the official immunity test "is somewhat less likely to be resolved at the summary judgment stage than is the federal test." 883 S.W.2d at 657. The *Chambers* court explained this was partially due to the requirement that a section 1983 plaintiff demonstrate violation of a *clearly established* constitutional right, and partially due to the relative procedural ease with which summary judgment may be granted in federal court. *Id.* Thus, where qualified immunity is based on a failure to show violation of a clearly established constitutional right, official immunity is not necessarily triggered.

a question of fact as to whether a reasonable officer in Phillips's position could have believed his conduct leading to the identification of Melton was reasonable. The Court denies Defendants' motion for summary judgment as to state law claims arising from Melton's arrest based on Texas official immunity.[5]

### B. Melton's Remaining Claims

Finally, Defendants seek summary judgment as to Melton's claims for assault and battery and negligent hiring, supervision, and training, and civil conspiracy. However, Defendants' asserted grounds for judgment on these claims are not based on qualified or official immunity, but on the lack of evidence to support these claims on the merits. Rule 56 generally assumes the parties have conducted discovery on the claims for which they seek judgment. *See F.D.I.C. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993) ("Summary judgment is appropriate if, *after discovery*, there is no genuine dispute over any material fact." (emphasis added)). Here, Melton has not been permitted to conduct any discovery except as it pertains to Defendants' qualified immunity defense. The Court accordingly declines to grant summary judgment based on arguments unrelated to qualified immunity and official immunity.

### CONCLUSION

The Court grants summary judgment in favor of Meeks on Melton's section 1983 claims against him in his individual capacity. The Court grants summary judgment in favor

---

[5]Defendants do not discuss the extent to which Meeks, as Sheriff, may be held vicariously liable for Phillips's state torts. Thus, the Court also denies summary judgment for Meeks on Melton's state law claims arising out of his arrest.

ORDER – PAGE 11

of Phillips on Melton's section 1983 Fifth Amendment claim against him in his individual capacity. The Court denies summary judgment as to Melton's section 1983 Fourth Amendment claim against Phillips in his individual capacity. The Court also denies Defendants' motion for summary judgment as to all state law claims.

Signed June 4, 2015.

David C. Godbey
United States District Judge